Peckham v. Millikan.

Filed March 12, 1885.

---

No. 11,118.

## PECKHAM v. MILLIKAN.

TAXES.—*Complaint to Set Aside Sale of Land.*—A complaint to set aside a sale of land for taxes legally assessed, on the ground that the land was sold without being advertised, and while the owner had sufficient personal property with which to pay the taxes, is insufficient upon demurrer unless it is also averred that the plaintiff has paid the taxes or offers to pay them.

SAME.—This rule applies in controversies between the land-owner and the purchaser.

SAME.—*Priority of Liens.—Mortgage.—Purchaser at Foreclosure Sale.*—Taxes

assessed against the owner of the equity of redemption become a lien upon the land superior to the lien of a prior mortgage given for purchase-money, and where such mortgage is foreclosed, and the land purchased under such decree, by the mortgagee, he takes it charged with such taxes.

SAME.—*Assessment in Another than Owner's Name.*—The assessment of taxes upon the owner's land in another's name does not impair the assessment.

SAME.—*Personal Property.*—The assessment of taxes for personal property becomes a lien upon the land of the owner in the county.

SAME.—*Misdescription of Land.—Lien.*—A misdescription of land assessed does not destroy the lien of the State for taxes, and a sale of such land for taxes by such misdescription will transfer the lien of the State to the purchaser.

SAME.—*Private Sale.*—A private sale of land for taxes, after notice as required by the statute, will transfer the lien of the State to the purchaser.

SAME.—*Statute Construed.*—A purchaser of land for taxes under the act of December 21st, 1872, where the title proves invalid, is only entitled to a lien for the purchase-money, and all subsequent taxes paid by him, at the rate of twenty per centum, under the 3d and 4th sections of the act of March 5th, 1883, which govern such cases.

From the Superior Court of Tippecanoe County.

*H. W. Chase, F. S. Chase, F. W. Chase, J. S. Frazer* and *W. D. Frazer,* for appellant.

*J. C. Blacklidge, W. E. Blacklidge,* and *B. C. H. Moon,* for appellee.

BEST, C.—The appellant brought this action to set aside a sale of his land for taxes and to quiet his title.

The complaint consisted of two paragraphs. A demurrer was sustained to the first and overruled to the second. An answer in denial was filed, and also a counter-claim, whereby the appellee sought to quiet his title. The latter was denied, and an agreement was made that any relief might be granted under the issues thus formed that would be proper under any state of pleading.

The cause was submitted to the court for trial, with the request that the court find the facts specifically and state its conclusions of law thereon. This was done. Both parties excepted to the conclusions of law, and judgment was rendered, setting aside the sale and adjudging a lien upon the

land in favor of the appellee for the amount of taxes paid, with eight per cent. interest thereon.

The appellant insists that the court erred in sustaining the demurrer to the first paragraph of the complaint, and in concluding upon the facts found that the appellee was entitled to a lien upon the land for the amount of taxes paid by him. The appellee, by a cross assignment of errors, insists that the court erred in overruling the demurrer to the second paragraph of the complaint, and in concluding upon the facts found that he was not entitled to interest at the rate of twenty-five per centum.    These questions will be considered in their natural order.

The second paragraph of the complaint alleged, in substance, that the appellant owned the land in question, and on September 30th, 1873, sold and conveyed it to John Hirzel, who, to secure the unpaid purchase-money, executed to him a mortgage upon said land for $8,000, one-half of which was payable in one and the other half in two years from that time, with interest at ten per cent.; that said John Hirzel failed to pay said mortgage; the same was thereafter duly foreclosed, an order of sale issued, and said land sold to the appellant on the 27th day of March, 1880; that the same was not redeemed, and at the expiration of a year from the sale the same was conveyed to the appellant, whereby he became re-invested with the title; that on the 18th day of February, 1880, the appellee purchased said land from the auditor of said county at private sale, for the taxes "alleged to have been assessed against the same as the property of said Hirzel, for the year 1878 and previous years;" that said taxes are alleged to have become delinquent to the amount of $223.04, and that the appellee paid the same to the treasurer of said county and received a certificate of purchase; that on the 24th day of February, 1882, the auditor of said county executed a deed for said land to the appellee, and by virtue thereof he now claims said land; that said sum of $223.04 "was not, nor was any part thereof, assessed or placed upon the tax-duplicate

which came to the hands of the treasurer of said county for any of the years of 1875, 1876, 1877, 1878 and 1879 against said land;" that notice of said sale was never published by said auditor. Wherefore, etc.

This paragraph was, as it seems to us, radically defective, because it fails to show that these taxes were paid or tender of payment made before suit brought, or that these taxes were not a lien upon the land.

This is an application to a court of equity to remove a cloud from the appellant's title, and it is well settled that so long as any of the taxes legally due remain unpaid, such court will not aid a party unless he offers to, pay the taxes due. *Harrison* v. *Haas*, 25 Ind. 281; *McWhinney* v. *Brinker*, 64 Ind. 360.

Our statutes do not change this rule. They authorize the holder of a tax title to bring an action to recover possession or to quiet his title, and they provide that if his title fail for certain causes, the court shall ascertain the amount of taxes paid, the improvements made, if any, and shall decree the amount a lien upon the land. The third section of the act of March 5th, 1883, is the only one that seems to authorize it. This section provides that "in case judgment shall be rendered against the person holding the title from the auditor aforesaid for the recovery of such land in an action of ejectment or other action, either at law or equity, the court shall ascertain the amount due to the person holding such tax deed," etc., "adding thereto the value of all improvements," etc., "and shall decree the payment thereof within such reasonable time," and on default thereof shall order the land sold. This section manifestly contemplates an action for the recovery of the land and none other. The phrase "or other action, either at law or equity," means nothing, as there is no other action by which land can be recovered, and the action of ejectment is at law. To maintain such action it is not necessary to "do equity." If the party has the legal title and is entitled to possession, he may maintain the action

though the opposite party is entitled to a lien. If, however, he can not at law successfully assail his adversary's title, and goes to a court of equity to set it aside, he must first do equity himself by paying or offering to pay what is due, and this statute does not enable him to do otherwise.

This land was liable for taxes, and assuming for the present that it was liable for the taxes assessed against John Hirzel, we think it does not appear that it was not liable for the taxes for which it was sold. The averment is that it was sold "for taxes assessed against John Hirzel for the year 1878, and for previous years," and that the sum of these taxes was not assessed or placed upon the duplicate for the years 1875, '6, '7, '8 and '9. The fact that they were not placed upon the duplicate, and this is all that is averred, in no manner affected their validity or released the land from its share of the common burden. Again, for aught that is averred, the taxes for 1874 may have been legally assessed and properly placed upon the duplicate, and no reason is assigned why this portion of the tax is not legally due and does not constitute a lien upon the land. If this portion is due, and payment or tender of payment has not been made, this action can not be maintained.

This much has been said upon the assumption that this land is liable for the taxes assessed against John Hirzel. This the appellant disputes. He maintains that as these taxes were assessed against Hirzel during the time this land was encumbered by appellant's mortgage, they only bound the equity of redemption, and inasmuch as this has been extinguished by the foreclosure of the mortgage and the sale of the property, no interest of Hirzel remains upon which they can attach, and hence they do not now constitute a lien upon the land. This precise proposition was decided adversely to the appellant in the cases of *Bodertha* v. *Spencer*, 40 Ind. 353, and *Isaacs* v. *Decker*, 41 Ind. 410. In each of these cases it was held that taxes thus assessed continue a lien upon the land after a foreclosure and sale upon a prior

mortgage, as against the mortgagee who becomes the purchaser. These cases, of course, are decisive of this question.

As this land was liable for the taxes thus assessed against John Hirzel, and as this paragraph did not aver payment or tender of payment, it was insufficient, and the demurrer improperly overruled.

The first paragraph of the complaint was defective for the same reason, and the demurrer thereto was, therefore, properly sustained.

The conclusion thus reached would seem to render it unnecessary to consider the questions raised by the exceptions to the conclusions of law, but as these questions will necessarily hereafter arise, we will now pass upon them.

A condensed statement of the facts as furnished by the appellant, and the conclusions of law, are in these words:

" July 28, 1832, said school section was subdivided by the proper officers, platted, and the plat recorded in the recorder's office, as follows:

NORTH

| Lot 4.<br>40.96 acres | Lot 3.<br>40.87 acres | Lot 2.<br>39.98 acres | Lot 1.<br>38.96 acres |
|---|---|---|---|
| Lot 5.<br>39.96 acres | Lot 6.<br>40 acres | Lot 7.<br>39.93 acres | Lot 8.<br>39.88 acres |
| Lot 12.<br>39.91 acres | Lot 11.<br>40.45 acres | Lot 10.<br>39.58 acres | Lot 9.<br>39.60 acres |
| Lot 13.<br>39.51 acres | Lot 14.<br>40.02 acres | Lot 15.<br>40.03 acres | Lot 16.<br>40.06 acres |

WEST    16    EAST

SOUTH

"September 16th, 1873, the appellant, being the owner of the northwest quarter of the southwest quarter of said section 16, which corresponds to lot twelve in said subdivision and recorded plat, by purchase of one White, executor of Edward C. Herrick, sold it to John Hirzel for $1,200, of which $400 was cash, and $800 evidenced by two notes of $400 each, at one and two years, at 10 per cent. interest, both of which were secured by a mortgage from Hirzel, who took immediate possession and kept it till May 5th, 1878. He had no other land, but his wife owned a tract adjoining on which they lived. Hirzel cut 200 cords of wood on the land, which he removed and sold. He had, during all the time he occupied the land, from $300 to $400 worth of personal property on it and the tract adjoining. The appellant recorded his mortgage immediately. The land was assessed to Herrick for 1874, and to the appellant for 1875, by the description of 'lot numbered 12, in section 16, township 23, range 5,' but for the years 1876, '7, '8 and '9 it was not assessed to any one, so far as the records in the auditor's office and treasurer's office of the county show; but they do show the assessment of lot number *two*, in said section 16, for those years to John Hirzel.

The taxes on lot 12 for 1874 were . . . . . . . . . $  16.11
For 1875, including the delinquent tax . . . . . .    20.75
For 1876, taxes for said lot *two*, in said section 16 .    73.55
For 1877, taxes for said lot *two*, including delinquencies,    97.62
For 1878,   "        "      " *two*,      "          "          123.31
And the aggregate of the delinquent chattel tax on
    chattels owned by John Hirzel up to and including
    1879, was . . . . . . . . . . . . . . . . . . . .    82.85

"Said John Hirzel did not pay any taxes on any land in said section 16 for the years 1874, '5, '6, '7, '8 and '9, or any of them; nor did the appellant pay any such taxes, but he did pay the taxes on said lot 12 for 1873.

"The northwest quarter of the northeast quarter of section 16, which corresponds to lot No. *two* upon said plat, made in 1832, was assessed from 1872 to 1879 to the actual owners

thereof by the description of lot 2, section 16, etc., and the taxes paid by such owners, ' while lot 12 was not on the duplicate, lot 2 was doubly assessed, and to the assessment of lot 2, in the name of John Hirzel in 1876, was carried the delinquency of 1875 against lot 12, and so continued from year to year against this record description of lot 2.'

"Said John Hirzel having failed to pay his notes, said mortgage was foreclosed by the appellant, who obtained a judgment February 14th, 1880, for $1,203.30 and costs—the appellee not being a party—under which said northwest quarter of southwest quarter of section 16, etc., was sold by the sheriff to the appellant for $900 March 27th, 1880, and a sheriff's deed was made to him therefor April 30th, 1881, which was rendered May 16th, 1881.

· "Said section 16 has been, since its subdivision in 1832, situate in Wabash township, in said Tippecanoe county, and said John Hirzel never owned any land in that township, except said northwest quarter of the southwest quarter of section 16.

"' There was the following, and no other entry and assessment of property on the tax-duplicate of Tippecanoe county for the year 1879, which came to the hands of the treasurer thereof in due form in the month of December, 1879, to wit: John Hirzel, 39.91 acres, part lot No. 2, section 16,

township 23, range 5, value of land and improvements . . . . . . . . . . . . . . . . . . . $ 16.20
Taxes, charges and interest . . . . . . . . . . . 139.84
Chattels . . . . . . . . . . . . . . . . . . 82.85 '

" The auditor caused notice of the sale of lands delinquent for taxes to be advertised, to take place at the court-house door on the second Monday of February, 1880, by four publications in the Lafayette Journal newspaper for four weeks, the last being January 30th, 1880, and in no other way, and there was no land situate in said section 16, township 23, range 5, advertised for sale in said February, 1880, for taxes, except that described as follows:

"' John Hirzel, 39.91 acres, pt. lot No. 2, sec. 16, T. 23, R. 5.'

" This land, by that description, was offered at public sale for the taxes, then amounting, with penalties, interest, costs, and the $82.85 chattel-tax against said John Hirzel, to $223.04, and no one bidding for it, the same was, February 12th, 1880, declared forfeited to the State, and February 18th, 1880, the treasurer and auditor of the county sold, for $223.04, ' at private sale to said Millikan, 39.91 acres, being part of lot No. 2, in section 16, township 23 north, range 5 west,' returned ' delinquent,' etc., for the taxes, costs and charges for the year 1878 and ' previous years,' and a certificate of purchase was issued to the appellant accordingly.

"Millikan paid $12.86 taxes on the land January 10th, 1882, and February 24th, 1882, a tax deed was made to him by the auditor for lands described thus : ' 39.91 acres, being part of lot No. 2 in section 16, township 23 north, range 5 west, and being more particularly described upon information furnished by the county surveyor as follows : The northwest quarter of the southwest quarter of school section 16, township 23 north, range 5 west, and being lot No. 12 in said school section.' This deed was duly recorded, and under it the said Millikan asserted title to lot No. 12, otherwise described as the northwest quarter of the southwest quarter of section 16, etc. He paid $2.85 for making and recording the deed.
" Upon these facts the court found as

" CONCLUSIONS OF LAW,

"*First.* That the title to the northwest quarter of the southwest quarter of section 16, etc., was in said Peckham.

"*Second.* That said Millikan had no title to said land, but had a lien thereon for $223.04, with 8 per cent. interest from February 18th, 1880, and for $12.86, with 8 per cent. interest from January 10th, 1882, and for $2.85 for cost of certificate, deed and recording, in all $298.30.

"*Third.* That Millikan was entitled to a judgment against said real estate for $298.30, with 6 per cent. interest from the date of finding, and unless the same should be paid within

sixty days said real estate should be sold to pay it without the benefit of appraisement or redemption.

"*Fourth.* That said Peckham was entitled to judgment setting aside the tax deed for said land."

The appellant maintains that the facts found do not entitle the appellee to a lien upon the land for the amount of taxes paid. This position is based upon two grounds. The first is that these taxes were assessed to John Hirzel, a mortgagor, whose equity of redemption has been foreclosed, and, in consequence thereof, the lien that then attached has been divested. This position is untenable, as has already been shown in passing upon the demurrer to the second paragraph of the complaint.

The next ground is that the facts show that the land never was assessed for these taxes, and by reason thereof the State acquired no lien, and hence none could be transferred to the appellee by the payment of the taxes. The facts found do not support this assumption. This land was assessed for the years 1874 and 1875. The first assessment was made in the name of the former owner, and the next in the name of the appellant. This fact, however, does not impair or affect the validity of these assessments. *Cooper* v. *Jackson,* 71 Ind. 244; *Mesker* v. *Koch,* 76 Ind. 68. The assessment for personal property was also a lien upon this land, as has several times been decided. *Bodertha* v. *Spencer,* 40 Ind. 353; *Isaacs* v. *Decker,* 41 Ind. 410; *Rinard* v. *Nordyke,* 76 Ind. 130.

It, therefore, appears that the State did have a lien upon such land for at least some of these taxes, and as the appellee paid them by purchasing the property at a tax sale, and as his title has failed, the lien thus held has been transferred to him, and he is entitled to enforce it against the land. *Ward* v. *Montgomery,* 57 Ind. 276; *Crecelius* v. *Mann,* 84 Ind. 147.

The most, therefore, that can be claimed, is that the lien declared was for more taxes than were legally due. Is this true? This position rests upon the assumption that the assessments of 1876, 1877, 1878 and 1879, were made upon a

different parcel of land.   If not thus made, this view can not be maintained.   These assessments describe the land as lot 2, and the appellant insists that this shows that a different parcel was assessed; while the appellee insists that lot 12 was in fact assessed, but misdescribed.   The facts found show that lot 2 was owned by and assessed to other parties, and that such taxes were regularly paid.   They further show that John Hirzel owned lot 12 and no other land, and that taxes on land was assessed to him.   It is highly improbable that the officers either intended or actually did assess lot 2 twice, or that they omitted to assess lot 12 once.   If they did not assess lot 2 twice, the land assessed to John Hirzel was misdescribed, and as he had no land other than lot 12 it must be that the assessments upon his land were made upon that lot.   In view of these facts it seems morally certain that this land was in fact assessed, though misdescribed, and we, therefore, think that these assessments constituted liens upon this land.

The next question is whether the court erred in not allowing the appellee interest at the rate of twenty-five per centum.   This sale was made while the act of December 21st, 1872, was in force, and it has been repeatedly held that where a sale is made under such act, and the conveyance is ineffectual to convey title, because of the facts found, the purchaser is entitled to interest upon the taxes paid at the rate of twenty-five per centum.   *Flinn* v. *Parsons*, 60 Ind. 573; *Duke* v. *Brown*, 65 Ind. 25; *Hosbrook* v. *Schooley*, 74 Ind. 51.

The act of December 21st, 1872, was repealed before the judgment in this case was rendered, but this in no manner affects the question as the law now and then in force authorizes the same rate of interest.   The fourth section of the act of March 5th, 1883, provides that if the title of such purchaser fails, he " shall recover the amount of taxes due on the land, with interest at the rate per centum per annum allowed by the law * * in force at the date of such sale."   This statute entitles the appellee to the rate of interest allowed by

the act of December 21st, 1872, under which the sale was made, and this was, as has been shown, twenty-five per centum. This applies to the amount paid upon the purchase, and as to taxes subsequently paid the rate is determined by the law in force when the payments were made. We, therefore, think that the court erred in concluding that the appellee was only entitled to eight per cent. interest upon any of the taxes paid.

This disposes of all the questions in the record, and for the reasons given the judgment must be reversed. If, however, the appellee is content to take a judgment for the taxes paid, with interest as above indicated, conclusions of law should be so stated, and judgment rendered accordingly; otherwise the demurrer should be sustained to the second paragraph of the complaint.

PER CURIAM.—It is therefore ordered that the above judgment be and it is hereby reversed, at the appellant's costs, with instructions to state conclusions of law and render judgment thereon if the appellee is contented therewith; otherwise to sustain the demurrer to the second paragraph of the complaint.

Filed Feb. 16, 1884.

## ON PETITION FOR A REHEARING.

BEST, C.—This petition has been earnestly pressed, and we have again carefully examined all the questions involved in this case. The first paragraph of the complaint concedes the legal assessment of the taxes for which the land was sold, and, in support of the relief sought, alleges that the sale was made without notice, and while the owner had sufficient personal property with which to pay his taxes. It is insisted that a sale made under these circumstances is not only void, but that the lien of the State is not transferred, and that a court of equity will set aside such sale without requiring the owner to pay the taxes legally due from him. The omission to advertise the land for sale, or the failure to first exhaust the owner's

personal property, will certainly defeat the purchaser's title.
This has often been decided, and is thoroughly settled. It
does not, however, follow that a court of equity will set aside
such sale unless the owner will pay the taxes legally due.
This duty rests upon him, and the fact that his taxes have been
paid by a purchaser at an illegal sale in no manner exonerates
him from such duty. After the sale the duty continues, and
so long as it remains undischarged a court of equity will not
disturb the sale. This rule, the appellant concedes, obtains
in a controversy between the State and the land-owner, but
insists that it does not apply to a controversy between the
land-owner and a purchaser. No authority is cited in sup-
port of this distinction, and we know of none; on the con-
trary, this rule has several times been applied by this court in
controversies between land-owners and purchasers. *Harri-
son* v. *Haas*, 25 Ind. 281 ; *McWhinney* v. *Brinker*, 64 Ind.
360; *Lancaster* v. *DuHadway*, 97 Ind. 565.

Aside from the authority furnished by these cases, no reason
occurs to us why this rule should not apply to all cases where
a party who seeks equitable aid is not himself "willing to do
equity," and we think it does apply. We, therefore, think
that as the appellant did not pay, nor offer by his pleading to
pay, the taxes legally due, the pleading was not sufficient,
though it appeared that the sale was made without notice, and
while the owner had sufficient personal property with which
to pay the taxes.

As the second paragraph failed to show that some of the
taxes for which this land was sold were not due, and these
taxes were not paid, nor any offer made to pay them, it was
likewise insufficient.

The conclusion of the court upon the facts found, that the
appellee acquired a lien upon the land in dispute for the
amount of the purchase-money, is strenuously assailed for
various reasons. Every position taken, however, in opposi-
tion to such conclusion, is based upon the assumption that
this land was not assessed. If not assessed, of course the

appellee acquired no such lien, because there was no lien to acquire.    The land, however, was, as we think, for the reasons given in the original opinion, assessed.    It is true that it was misdescribed, and that such misdescription ran through all the proceedings, but this fact, though it vitiated the sale, did not destroy the lien of the State.    The lien existed, and though the sale was inoperative to convey the title, it was effectual to transfer the lien.    The mere misdescription of land intended to be assessed, and which can be ascertained, does not impair the lien of the State, nor prevent a purchaser from enforcing such lien by the appropriate remedy.    *Cooper* v. *Jackson*, 71 Ind. 244; *Sloan* v. *Sewell*, 81 Ind. 180; *Parker* v. *Goddard*, 81 Ind. 294.    A private sale of land for taxes after notice, and as prescribed by the statute, will transfer the lien of the State to the purchaser.    *McWhinney* v. *City of Indianapolis*, 98 Ind. 182.    The sale made in this case, therefore, operated as a transfer of the lien of the State to the appellee, notwithstanding such misdescription, and he was entitled to an order for its enforcement.

In the original opinion the conclusion was reached that the appellee was entitled to interest at the rate of twenty-five per centum upon the amount of the purchase-money, but subsequent reflection has induced the conclusion that the proper construction of sections 3 and 4 of the act of March 5th, 1883, Acts 1883, p. 95, which control the recovery of interest, only entitles the appellee to twenty per centum upon the amount of such purchase-money, and all subsequent taxes paid.    The 3d section fixes the rate at twenty per cent., and the 4th section only applies to sales made under previous laws allowing a lower rate of interest.    The original opinion is, therefore, thus modified, and the petition for a rehearing should be overruled.

PER CURIAM.—The petition is overruled.

Filed March 18, 1885.