The State, *ex rel.* MacKenzie, *v.* Casteel, Auditor.

Filed March 19, 1887.

————————

No. 10,877.

THE STATE, EX REL. MACKENZIE, *v.* CASTEEL, AUDITOR.

TAXES.—*Sale.*—*Caveat Emptor.*—The doctrine of *caveat emptor* applies in its fullest extent to tax sales.

SAME.—*Right of Purchaser to Recover Money Paid from County.*—A purchaser at a tax sale buys at his own risk, and if the sale proves ineffectual, he can not, in the absence of an express statute, recover from the county the money paid by him.

SAME.—*Distinction between Void and Ineffectual Sales.*—Under the tax law of this State, a sale is void when it will not enable a purchaser to secure a lien, but simply ineffectual when it will not convey title.

The State, *ex rel.* MacKenzie, *v.* Casteel, Auditor.

SAME.— *When Sale is Void.*—A sale is void only where the land is not liable to taxation, where the taxes were paid before sale, or where the description is insufficient.

SAME.— *When Purchaser May Recover from County.—Statute Construed.*—Where the sale is effectual to convey a lien, the purchaser can not recover from the county the money paid by him, but where it is void, and conveys nothing, he can recover. Sections 6486, 6487 and 6488, R. S. 1881, construed together.

SAME.—*Sale of Land where there is Personal Property.*—If a taxpayer has personal property, a sale of his real estate, while not void, is ineffectual to convey title, but is effectual to transfer the lien of the State, and the remedy of the purchaser is upon his lien, and not against the county.

SAME.—*Description.*—Where the description is insufficient, no title passes to the purchaser, but the latter acquires an enforceable lien, to which he must look for a recovery of the money paid by him, if he can show what property was intended to be taxed.

SAME.—*Delinquent List.— Certificate of Sale.*—The lien of the State is not dependent upon and is not impaired by an insufficient description in the delinquent list or in a certificate of sale issued to a purchaser.

SAME.—*Mandate.*—A petition by a purchaser at a tax sale for a mandate to compel the refunding of money paid is bad if it fails to show that the sale was ineffectual to transfer the State's lien.

PLEADING.—*Sufficiency.— Conclusions and Recitals.*—Whether a pleading is, or is not, sufficient, depends upon the substantive facts stated, and not upon the conclusions or recitals of the pleader.

SAME.—*Construction.*—Where a pleading, in its statement of the facts requisite to a cause of action, is ambiguous or defective, it will be construed most strongly against the pleader.

From the Clay Circuit Court.

*J. T. Lecklider, J. M. Judah* and *O. B. Jameson,* for appellant.

*G. A. Knight* and *C. H. Knight,* for appellee.

ELLIOTT, C. J.—The petition of the relator seeks a writ of mandate against the auditor of Clay county, to compel him to issue an order on the treasurer, requiring him to refund $809.43 paid by William Rowe upon a purchase of land at a tax sale made in 1881.

It is alleged that the relator became the owner of the certificate by assignment, that no deed was ever executed, that a demand was made upon the auditor and met by a refusal,

and that the sale was void. It becomes necessary to set forth the grounds upon which the sale is asserted to be void, as these exert a controlling influence in the case, and we therefore copy the allegations of the pleading upon this subject. These allegations read as follows: "Said property was sold at said delinquent tax sale aforesaid for more than the legal taxes, costs and charges due thereon, and assessed and charged legally against the same, viz., for an excess of the legal taxes, costs and charges of more than one cent, in violation of law. There was no compliance with the law requiring the county auditor to make up a delinquent list, and publish the same, and the auditor of Clay county did not publish, or cause to be published, a copy of the delinquent list containing a description of lands returned delinquent, describing the same in such list, as they were described on the tax duplicate; that said lot No. 1 was never advertised for sale for delinquent taxes in the published delinquent list, prior to said pretended sale thereof; that said property was not described in said delinquent list pretended to have been published as aforesaid; that in the column in said delinquent list, headed 'Name of town,' appears the following: 'Bail. frac. 1,' and in the next column appears '2,' under heading of 'In-lots,' and in the next column appears '10,' under heading of 'No. of sqr.,' and says that there is nothing showing in what 'town' or place said lots are or should be located, and that the description of said property, as set out in said published delinquent list, and also in the said certificate of purchase heretofore referred to, is utterly insufficient to determine the location of any property, and does not state in what town, township or place the said property exists or is located. There is not connected with said insufficient description any name of town, city, county or State, designating the location at all, and says there is no such place in Clay county as 'Bail. frac. 1,' and further says there is no such place in said county as 'Bailey's Staunton,' as he is informed, and says that said property was sold for more than the legal taxes, costs and charges due thereon

at the date of the pretended sale ; that other real estate was taxed jointly with said property, and the tax chargeable against said other real estate was wrongfully carried against said property in said certificate set out, and the same was sold therefor, and further says that said lots, in certificate described, were sold for a large amount of tax due and chargeable on the individual personal property of persons other than the owners of said lots ; that said lots were owned by J. H. and E. Graham for a part of the years they were delinquent, and during said years the tax on a large amount of personal property not belonging to them was wrongfully carried up and charged against said lots, and entered into and was a part of the charge for which they were sold ; and further says that at the date and time said lots were sold as pretended, the owner of the fee of said lots owned, and had in his possession in Clay county, Indiana, a large amount of personal property of great value, viz., of the value of more than enough to pay said taxes legally chargeable on said lots ; that said personal property was returned for taxation, as shown by the returns of the assessor on file in said auditor's office at the time, and also duplicates ; that said personal property was liable to levy and distraint for the payment of said taxes, but, as affiant is informed and believes, no demand or distraint thereof was ever made ; that said property was offered for sale all together ; said lots were not offered for sale separately, or sold separately ; and further says that the taxes were not carried out, and charged on the tax duplicate separately against each of said lots, as it should have been done, but jointly against both, contrary to law ; and further says that, at or before said sale, no demand was ever made by the treasurer of said county upon the owner of said property for personal property, or payment of said taxes, and no personalty of the owner thereof was distrained, although the owner had an abundance of personal property in his possession in said county at the time, out of which the said legal taxes,

The State, *ex rel.* MacKenzie, *v.* Casteel, Auditor.

costs and charges might have been made; and further says. that said lots, during some of the years of said pretended delinquency, belonged jointly to J. H. and E. Graham, and during said years they were charged with the taxes on other real estate, to wit: Lots 55 and 56 (a full description of which. affiant can not set out), which said other real estate belonged to another person, to wit, to one J. H. Graham, and that during the years aforesaid a large amount of taxes due on personal property belonging not to J. H. and E. Graham, the owners of said lots sold as aforesaid at said delinquent tax sale, but to other persons or to another person, to wit, whose name is unknown to plaintiff and affiant, and says that the taxes chargeable on such personalty were wrongfully charged up and taxed against said lots, and were a part of the price for which the same were sold to plaintiff under said tax sale, and says that the said lots were sold for pretended taxes that were never carried upon, or charged against the same legally on the tax duplicates of said Clay county, Indiana, and says that illegal costs and charges and interest and penalties were carried against said property, and property was sold therefor wrongfully. Plaintiff and affiant says that the taxes for which said property was sold as aforesaid were never assessed against the same, nor was the same legally assessable therefor and chargeable therewith; and further says that on or about the 21st day of June, 1875, said lots and property were owned by a party by the name of ———, to wit, the name Henry McClure, and that such person continued to be the owner thereof until the 15th day of April, 1879, and during said time he so owned said property there was a large amount of personal property, the tax on which personal property so taxed was charged against said real estate wrongfully; the said personal property so taxed and charged did not belong to the said owner of said real estate, nor was said real estate in any sense chargeable therewith, and says that said real estate was unlawfully sold for such tax on said personalty; said erroneous tax amounted to more than, to wit, $1, and

entered into and made part of the price for which said property was illegally sold.

"Plaintiff further says there was charged up against said lots, described as aforesaid, a large amount of illegal costs, also a large amount of illegal interest, also illegal penalties, to wit, in the aggregate more than one cent more than the legal amount due and chargeable by law thereon, and that said illegal charges, so made, entered into and formed part of the amount for which said property was so sold, and of the purchase price thereof so paid."

It is a firmly settled general rule, that a purchaser at a tax sale buys at his own risk, and that, if the sale proves ineffectual, he can not, in the absence of an express statute, recover from the county the money paid by him. The payment is regarded as a voluntary one, and he assumes all risks, for, as in judicial sales, there is no warranty in tax sales.

Where an action is brought to recover money paid on the purchase of property at a sale, the party asking that it be refunded must show a statute providing that it shall be paid back to him. *Mc Whinney* v. *City of Indianapolis*, 98 Ind. 182; *Board, etc.,* v. *Graham*, 98 Ind. 279 ; *Durham* v. *Board, etc.,* 95 Ind. 182; *Board, etc.,* v. *Armstrong*, 91 Ind. 528; *Board, etc.,* v. *Ruckman*, 57 Ind. 96; *City of Indianapolis* v. *Langsdale*, 29 Ind. 486; *Lima Tp.* v. *Jenks*, 20 Ind. 301; *Martin* v. *Stanfield*, 17 Ind. 336 ; *Jenks* v. *Lima Tp.*, 17 Ind. 326.

In *City of Logansport* v. *Humphrey*, 84 Ind. 467, it was said : " The general rule is beyond dispute that the purchaser at a tax sale assumes all risk, and except as he may be vested by force of statutory provision with the lien which the State or municipality held against the property of the delinquent tax debtor, he is without remedy if he fails to obtain a good title under his purchase. The doctrine of *caveat emptor* applies to such sales in its fullest force." The following authorities were cited: Cooley Taxation, 572; *Lynde* v. *Inhabitants, etc.,* 10 Allen, 49 ; *Packard* v. *New Limerick*, 34 Maine, 266 ; *Hamilton* v. *Valiant*, 30 Md. 139. To which may be

added the authorities referred to by NIBLACK, J., in *Board, etc., v. Armstrong, supra,* and those collected in an article in 20 Central Law Journal, p. 224.

These authorities leave no room to doubt that the relator has no cause of action unless it is expressly given him by statute, and his action, therefore, rests solely upon the statute. It is a familiar rule that a party who relies upon a statute must show that he is within its provisions. The question here narrows to this: Is the appellant's case within the statute ?

The provision upon which he relies, and the only one which in the slightest degree tends to support his claim, is this :

" Whenever the county auditor shall discover, prior to the conveyance of any lands sold for taxes, that the sale was, for any cause whatever, invalid, he shall not convey such lands ; and the purchase-money and the interest thereon shall be refunded out of the county treasury to the purchaser, his representatives or assigns, on the order of the county auditor ; and such land, if originally liable to taxation, being still delinquent, shall again be placed on the delinquent list, and the amount so refunded, with interest, be collected as in other cases." R. S. 1881, section 6486.

This, however, is but a single section of several hundred found in the statutes concerning the assessment and collection of taxes, and it is not to be considered as an independent law, but is to be considered as an integral part of one' uniform system. It is one among the most familiar of the rules of law, that statutes are to be construed together so as to constitute one harmonious system, and so that no section or clause shall be rendered nugatory or meaningless. *Humphries v. Davis,* 100 Ind. 274 ; Bishop Written Laws, sections 82, 86, 113.

In order, therefore, to ascertain the meaning of the section quoted, we must look to other parts of the statute, and consider that section in connection with the other provisions of

the statute. The section which immediately follows the one above set forth reads thus:

" No sale or conveyance of land for taxes shall be valid if, at the time of being listed, such land shall not have been liable to taxation, or, if liable, when the taxes thereon have been paid before sale, or if the description is so imperfect as to fail to describe the land or lot with reasonable certainty ; and, in all such cases, the money paid by the purchaser at such void sale shall be refunded, with interest, out of the county treasury, on order of the county auditor." Section 6487.

The next succeeding section provides that, " If any conveyance for taxes shall prove to be invalid and ineffectual to convey title because the description is insufficient, or for any other cause than the first two enumerated in the preceding section, the lien which the State has on such lands shall be transferred to and vested in the grantee, his heirs and assigns, who shall be entitled to recover from the owner of such land the amount of taxes, interest, and penalty legally due thereon at the time of sale, with interest, together with the amount of all subsequent taxes paid, with interest ; and such lands shall be bound for the payment thereof." R. S. 1881, section 6488.

These provisions recognize a difference between sales that are ineffectual to convey title and sales that are void. The reasonable construction of the statute is, that a sale is void when it will not enable the purchaser to secure a lien, but is simply ineffectual when it will not convey title. If this is not true, then there is no reason for making provision for two different classes of cases, as the statute plainly does. But the language of the statute itself clearly makes the distinction, for it provides that if any conveyance for taxes shall prove to be invalid for any other cause than those enumerated, " the lien of the State shall be transferred to the purchaser." To ascertain what causes are enumerated as making a sale void, or invalid, for the statute uses the terms as synonymous ones, we look to the section which provides, that " No sale or conveyance of land for taxes shall be valid if, at the time

of being listed, such land shall not have been liable to taxation, or, if liable, when the taxes thereon have been paid before sale, or if the description is so imperfect as to fail to describe the land or lot with reasonable certainty."

This is the legislative definition of the language employed, and it is the one the courts must adopt. It therefore appears from the face of the statute itself, that there are three cases where the sales are invalid or void, namely, where the land is not liable, where the taxes were paid before sale, and where the description is insufficient. These are the cases where the sales or conveyances are not valid for any purpose; but they are not the cases where the sales are merely ineffectual to convey title, for there are cases where the sales are sufficient to convey liens, and such sales can not, therefore, be void.

The word employed in the first of the sections quoted is "invalid," and this word is defined by Webster to mean, "having no force, effect, or efficacy; void; null."

If a sale is null or void, it can convey nothing at all, for it is inconceivable that a void or null thing can convey a valid thing of any kind, character or description, so that an invalid tax sale could not convey a lien; but the statute expressly declares that sales shall transfer liens except in the three cases enumerated, and only such sales can, therefore, be void. If a sale can convey a lien it is not null. But, in the second of the sections quoted, the language is " such void sale," and a void thing is absolutely and entirely destitute of force, so that it must be that the statute, in giving a right to a purchaser to recover money paid by him, intends a sale utterly ineffectual for any and all purposes.

Taking these sections of the statute together, and looking alone to the language employed, the proper construction is, that where the sale is effectual to convey a lien, the purchaser can not recover the money paid by him; but where it is void, and conveys nothing, then he may recover the money paid.

This construction makes the right to recover depend, not

upon the efficacy of the sale to convey title, but upon its efficacy to carry to the purchaser the lien of the taxing power. This construction does the purchaser no wrong, but protects the public, and carries into effect the purpose of the statute. If the sale carries the lien, he secures his money, with liberal interest, and suffers no loss; if he does not secure an enforceable lien, he has a right to have the money paid by him refunded. Any other construction would make the government an insurer of the legality and regularity of tax sales, and leave it to the pleasure of buyers to enforce their lien or sue the county. Any other construction would impair the force of the provision giving liens in cases of ineffectual sales, and destroy the difference made by the statute between sales absolutely void, and sales effectual to transfer a lien, but ineffectual to convey title.

The cardinal rule in the construction of statutes is to discover and give effect to the intention of the Legislature. The construction adopted will give effect to the intention of the law-making power, and will not subordinate it to an isolated clause. It will give effect to the leading and controlling purpose of the statute, rather than bend to particular sentences or clauses, and this, as all the authorities agree, is the great object of judicial interpretation.

The Legislature did not intend to insure or guarantee that the purchaser at a tax sale should get back his money, or else secure an indefeasible title to the land sold. It was not unknown to the Legislature, it is not unknown to the courts, nor, indeed, to any intelligent citizen, that it is only in very rare instances that a tax sale carries title, and it can not be justly assumed that the Legislature meant to compel the refunding of money when the title did not pass, although a lien was transferred. The policy of the tax laws is to secure revenues to carry on the affairs of government, and this policy will be defeated if it be held that in all cases where a sale is ineffectual to convey title because of some omission or irregularity, the purchaser may recover the money paid. If this

be true, then, in the very great majority of cases, the money paid by purchasers will go back to them, and the revenues be diminished.

It has never been the policy of the law to insure to purchasers at tax sales a return of their money, and thus relieve them of all risk, and render it unnecessary for them to exercise care and diligence in buying, and the present statute was not framed for the purpose of defeating this policy, but for the purpose of modifying it, so as to allow a recovery where no lien was created, and where a total loss would result to the purchaser, because of the absolute invalidity of the sale.

The great purpose of all tax laws is to make the property liable to taxation pay the taxes, and a lien is given the purchaser in order to further this purpose by inducing him to make his money out of the property, and a different construction from that suggested will defeat this purpose, for few purchasers would attempt to enforce a lien if they could get back their money from the government without the hazard or annoyance of litigation. Unless the construction suggested is adopted, the provisions of the statute respecting the transfer of the lien of the State to the purchaser, in cases where the sales are ineffectual to convey title, would be practically useless. If this construction be not adopted, then the expense of advertising, making sales and conveyances, would, in by far the greater number of cases, be a useless waste of the public revenues, for the ultimate result would be that the property must again be put upon the duplicate, and other attempts be made to make it pay its proportion of the tax. The penalty allotted the purchaser has a two-fold purpose, to induce the taxpayer to promptly pay his taxes, and to compensate the purchaser for the risks he assumes; but if he is certain to get back his money from the public, he incurs no risk, and, as to him, the purpose of providing a penalty is defeated. If he assumes no risks, but can, in any event, se-

cure either a perfect title or the return of his money, then, the compensation provided for the risk is purposeless.

Our decisions recognize the correctness of the construction here suggested. The case of *Mc Whinney* v. *City of Indianapolis*, 98 Ind. 182, is directly in point. In that case it was said : "Assuming that these statutes are applicable to a sale made by a city treasurer, the facts averred do not show this sale to have been ineffectual for any of the causes enumerated in any one of these statutes, and, therefore, the appellant does not show himself entitled to the remedy thus provided."

In the more recent case of *Mc Whinney* v. *City of Indianapolis*, 101 Ind. 150, this doctrine is re-affirmed, but it was held that the claimant's case was within the statute, because the property was not subject to taxation.

In the case of *Hilgenberg* v. *Board, etc.*, 107 Ind. 494, it was said : "In respect to the legality of the proceedings on which a tax sale is based, as well as to the validity of the title of land sold, a purchaser at such sale assumes all risk, except only such as the statute makes provision for. If he fails to acquire title, or if his lien is less extensive than he anticipated, he may have such recourse, and such only as the statute provides." And it was held that the purchaser, claiming to have taxes refunded, must show, either that the land was not subject to taxation, or that the taxes had been paid before sale.

No injustice is done the purchaser by this doctrine, for he may, as our cases all agree, enforce the lien of the State for the taxes actually due upon the land, even though the sale is utterly void. The only exception to this general rule is in the cases named in the case referred to, and it is only in such cases that the purchaser is entitled to have his money refunded. *Ludlow* v. *Ludlow*, 109 Ind. 199; *Culbertson* v. *Munson*, 104 Ind. 451; *Watkins* v. *Winings*, 102 Ind. 330; *Peckham* v. *Millikan*, 99 Ind. 352.

Our cases uniformly hold that if the taxpayer has personal property, a sale of his real estate is ineffectual to convey title,

but is effectual to transfer the lien of the State. *Schrodt* v. *Deputy*, 88 Ind. 90; *Jenkins* v. *Rice*, 84 Ind. 342; *Sloan* v. *Sewell*, 81 Ind. 180; *Parker* v. *Goddard*, 81 Ind. 294; *Crecelius* v. *Mann*, 84 Ind. 147; *Lawson* v. *Hilgenberg*, 77 Ind. 221; *Bender* v. *Stewart*, 75 Ind. 88; *Hosbrook* v. *Schooley*, 74 Ind. 51; *Flinn* v. *Parsons*, 60 Ind. 573; *Ward* v. *Montgomery*, 57 Ind. 276.

These cases proceed upon the principle that such a sale is not a void one, for, to aver the contrary, involves the contradiction of affirming that a thing which has no effect has some effect. If the sale is void, no rights can possibly be conveyed by it, for, as the books say, " if a thing is void it is as if it never existed." These cases, therefore, necessarily lead to the conclusion, that a sale of sufficient efficacy to carry a lien is not void, and, if not void, the purchaser must enforce his lien, and can not get back his money from the county.

It has often been held, that an insufficient description of the land will defeat the title, but will not defeat the lien. The lien will hold if the purchaser can show what property was intended to be taxed, but the title will not pass if the description is defective. *Ludlow* v. *Ludlow, supra; Cooper* v. *Jackson*, 99 Ind. 566; *Reed* v. *Earhart*, 88 Ind. 159; *Ford* v. *Kolb*, 84 Ind. 198; *Sloan* v. *Sewell, supra; Cooper* v. *Jackson*, 71 Ind. 244.

The principle necessarily involved and impliedly decided in these cases is the same as in the others cited, namely, where the lien is transferred the sale is not void within the meaning of the statute. The same principle is also involved in those cases which decide that omissions or errors of the officers may operate to avoid the sale, but not to a greater extent than to prevent the acquisition of title. *Peckham* v. *Millikan, supra.*

It is illustrated in the most emphatic manner by the cases holding that a private sale of land for taxes will transfer the lien although it is ineffectual to convey title. *McWhinney* v. *City of Indianapolis, supra; Peckham* v. *Millikan, supra.*

One of the best known rules of pleading is, that mere recitals and conclusions are not of controlling force. Whether a pleading is, or is not, sufficient, depends upon the substantive facts, and not upon the conclusions or recitals of the pleader. General statements are always controlled by the specific facts stated in the pleading. *Ragsdale* v. *Mitchell,* 97 Ind. 458; *Richardson* v. *Snider,* 72 Ind. 425 (37 Am. R. 168); *Reynolds* v. *Copeland,* 71 Ind. 422; *State* v. *Wenzel,* 77 Ind. 428, *vide* auth. p. 430; *Jackson School Tp.* v. *Farlow,* 75 Ind. 118.

The general conclusions and recitals which abound in the complaint are, therefore, without force, and the sufficiency of the pleading must be determined upon the facts stated.

Pleadings are to be liberally construed so far as concerns matters of form, but this rule does not dispense with the necessity of pleading, and properly pleading, the facts which constitute the cause of action. Where the pleading in its statement of facts is ambiguous or defective, it will be construed most strongly against the pleader. *Pond* v. *Sweetser,* 85 Ind. 144.

In *Clark* v. *Dillon,* 97 N. Y. 370, it was said: " It was formerly the settled rule to construe doubtful pleadings most strongly against the pleader, but this rule has been so far modified by the code as now to require them to be liberally construed with a view to substantial justice between the parties. This modification has, however, been held to extend only to matters of form and not to apply to the fundamental requisites of a cause of action. (*Spear* v. *Downing,* 34 Barb. 522; *Cruger* v. *Hudson River R. R. Co.,* 12 N. Y. 190; *Bunge* v. *Koop,* 48 N. Y. 225.) A construction of doubtful or uncertain allegations in a pleading, which enables a party by thus pleading to throw upon his adversary the hazard of correctly interpreting their meaning, is no more allowable now than formerly; and when a pleading is susceptible of two meanings, that shall be taken which is most unfavorable to the pleader. *Bates* v. *Rosekrans,* 23 How. Pr. 98."

The State, *ex rel.* MacKenzie, *v.* Casteel, Auditor.

Applying these rules to the pleading before us, it becomes apparent that the only statements which, even remotely, tend to show a cause of action entitling the relator to recover, are those concerning the description of the property. The question is, whether these statements show that there was no such description as enabled the purchaser to acquire and enforce a lien ?

It is important to keep in mind the fact that the complaint does not allege that the land was not fully and correctly described on the tax duplicate. It is, indeed, conceded that it was there properly described, for the statement of the pleader is, "that the auditor did not publish a delinquent list containing a description of the lands as delinquent, describing the same in such list as they are described in the tax duplicate." The complaint is, not that the land was not sufficiently described on the duplicate, but that it was not sufficiently described in the delinquent list and certificate of sale. This does not show that the State did not acquire a lien, nor does it show that the lien was not transferred to the purchaser.

The lien of the State does not depend upon the description in the delinquent list, or upon that in the certificate ; it attaches long before there can be either a delinquent list or a certificate. As the lien is antecedent to the delinquent list and the certificate, it can not be possible that the description in either can impair its validity. An insufficient description in that list, or in the certificate, may defeat title, but it can not destroy the lien, for the lien is not dependent upon them. If the description in the duplicate is sufficient, there is undoubtedly a lien, and if a lien, the purchase and payment of the purchase-money carry it to the purchaser. Where the purchaser secures a lien capable of enforcement, he must proceed against the property, and can not compel the county to refund the money paid by him.

The judgment is affirmed.

Filed March 17, 1887 ; petition for a rehearing overruled May 12, 1887.