[No. C013994. Third Dist. Feb. 16, 1994.]

CITY OF SACRAMENTO, Plaintiff and Appellant, v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., Defendants and
Appellants.

## COUNSEL

Sharon Siedorf Cardenas, City Attorney, William P. Carnazzo, Assistant City Attorney, Leslie R. Lopez and Catherine H. Brown, Deputy City Attorneys, for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Floyd D. Shimomura, Assistant Attorney General, Cathy Christian and Ramon M. de la Guardia, Deputy Attorneys General, for Defendants and Appellants.

## OPINION

**BLEASE, Acting P. J.**—The City of Sacramento (Sacramento) appeals from a judgment which declares that a 1987 amendment to the Public Employees' Retirement Law, relating to enhanced pension benefits, applies to its employees without its election.

Sacramento, as an agency contracting with the Public Employees' Retirement System (PERS), is subject to the Public Employees' Retirement Law. Under that law employees classified as "local safety members" (§ 20019),[1] including "local firemen" (§ 20021), are entitled to enhanced pension benefits (§ 21252.01).

In 1987 the Legislature amended section 20021, expanding the class of "local firemen" from "active" firefighters to include those engaged in fire prevention, training, or investigation. (Stats. 1987, ch. 1411, § 2, p. 5198.)

---

[1] A reference to a section is to the Government Code unless otherwise indicated.

The amendment did not condition its application upon the election of the contracting agency nor had the section ever been so conditioned. By contrast, another section, added in the same enactment, does condition the extension of safety membership to harbor and port officers upon the election of the contracting agency. (§ 20019.37.)[2]

PERS concluded that the 1987 amendment is binding upon Sacramento without its election. The trial court agreed. This appeal followed.

Sacramento claims that it is not subject to the 1987 amendment without its election. It concedes that the result it seeks is completely at odds with the statutory language. It relies upon the Legislative Counsel's digest, legislative staff digests and other extrinsic matter which mistakenly say that the firefighter amendment is conditional upon the election of the contracting agency. It argues that this matter evinces the Legislature's intent and that we should carry out that intent and "construe" section 20021 to include the omitted condition.

We are asked to employ legislative history in a manner beyond its capacity to shed light on the text of the statute. Because this would require that we amend the language of section 20021 to insert a provision it does not contain, a power we do not possess,[3] we decline the invitation.

The result which Sacramento would have us achieve was accomplished prospectively in 1989 in an enactment which removed the 1987 amendments to section 20021 and placed them in a new section 20021.01 made conditional on the election of the contracting agency. (Stats. 1989, ch. 1464, §§ 1 and 2, pp. 6534-6535, eff. Oct. 2, 1989; see fn. 9, *post.*) This provides no warrant to make these amendments retroactive by judicial fiat.

With exceptions to be noted we will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Under the Public Employees' Retirement Law municipalities and other local public agencies may contract with PERS to place their employees in the state retirement system. (§ 20450.) Sacramento has made such a contract.

---

[2]Section 20019.37 in pertinent part provides: "This section shall not apply to the employees of any contracting agency, nor to any contracting agency, unless and until the contracting agency elects to be subject to this section by amendment to its contract with the board, pursuant to Section 20461.5, or by express provision of its contract with the board."

[3]"In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858.)

A contract with PERS subjects the contracting agency to the Public Employees' Retirement Law "and all amendments thereto applicable to members, local miscellaneous members, or local safety members except such as are expressly inapplicable to a contracting agency unless and until it elects to be subject to such provision." (§ 20493.)

Employees are classified as "local miscellaneous members" or "local safety members." (§§ 20013, 20018-20019.) The latter are entitled to enhanced pension benefits which require payment of a substantially higher employer contribution. (Compare, e.g., § 21251.13 with § 21252.01.) The term "local safety member" includes "all local . . . firemen . . . ." (§ 20019.)

Before its amendment in 1987, section 20021 defined "local firemen" as employees engaged in active firefighting and prevention: " 'Local fireman' means any officer or employee of a fire department of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and whose functions do not clearly fall within the scope of active fire fighting and prevention service even though such an employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active fire fighting and prevention service, but not excepting persons employed and qualifying as firemen, hosemen or equal or higher rank, irrespective of the duties to which they are assigned." (Stats. 1945, ch. 1224, § 4, p 2330.)

This provision contains no language conditioning its application to employees upon the election of a contracting agency; its benefits are therefore mandatory.

The 1987 amendment to section 20021 was sponsored by PERS. It added the underlined matter and deleted the strikeover matter, as follows: " 'Local fireman firefighter' means any officer or employee of a fire department of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and whose functions do not clearly fall within the scope of active firefighting, and fire prevention, fire training, or fire investigation service even though such an that employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active firefighting, and fire prevention, fire training, or fire investigation service, but not excepting persons employed and qualifying as firefighters firemen, hosemen or equal

or higher rank, irrespective of the duties to which they are assigned." (Stats. 1987, ch. 1411, § 2, pp. 5198-5199.)[4]

PERS informed the contracting agencies, including Sacramento, that the amendment effected the compulsory inclusion in the class of "local safety members" of fire department employees whose duties encompassed fire prevention, training, or investigation. It also informed them that the beneficiaries of the amendment are entitled to conversion of their prior local miscellaneous service credit to local safety service credit under section 20803.2.[5]

In 1989 Sacramento entered into a labor agreement with its firefighters union. Seven employees classified as fire prevention officers were granted "local safety member" status in accordance with PERS's view of the amended section 20021. The agreement reserved the right to seek declaratory relief to vindicate Sacramento's view that such status was conditional upon its election, and if it prevailed, to return the fire prevention officers to "local miscellaneous member" status, nunc pro tunc.

This declaratory relief action followed. Sacramento adduced evidence that some thought the provisions for an expanded class are inapplicable in the absence of an election by the contracting agency. This includes several legislative committee staff analyses which assert that the extension of local safety member status is dependent upon the election of the contracting agency. The author of the bill made similar assertions in a letter written to the Governor asking him to sign the bill. In addition, a Legislative Counsel Digest summarizes Assembly Bill No. 839 (1987-1988 Reg. Sess.), the vehicle by which section 20021 was amended, as follows: "This bill would authorize contracting agencies . . . to include within the local firefighter category, fire department employees providing fire training or fire investigation services. These provisions would be inapplicable to a contracting agency unless and until it elects to be subject to these provisions."

---

[4]The change from "fireman" to "firefighter" rendered the category gender neutral. For this reason we read "firemen," in the unamended section 20019, as inclusive of "firefighter" as used in section 20021. (See §§ 12, 12.5.)

[5]Section 20803.2 is as follows:

"Past local miscellaneous service shall be converted to local safety service if the past service:

"(a) Was rendered by a current employee of the same agency for which the miscellaneous service was performed; and

"(b) Was rendered in a position that has subsequently been reclassified as a local safety position; and

"(c) Is credited to an employee who has other local safety service credit for service performed with the agency."

The trial court concluded that section 20021, as amended by Statutes 1987, chapter 1411, is unambiguous in conferring mandatory local safety member status on fire department employees whose functions fall within the scope of fire prevention, training, or investigation. It also concluded that section 20803.2 is applicable only where a reclassification of a position as a local safety position is effected by the local employing agency and not when "the reclassification was made by the Legislature."

A judgment embodying these rulings was entered and Sacramento and PERS each appeal from the parts of the judgment adverse to their position.

DISCUSSION

I

A.

■ Sacramento asks us to conform the language of the 1987 amendment to the legislative intent it views as manifested in the Legislative Counsel's Digest and other matter extrinsic to the statute. It argues that this intent "warrant[s] the correction of a legislative error . . . ." It concedes that the result it seeks "is completely at odds with the language of the statute."

This view misconceives the nature of the judicial power to construe statutes; that which is construed is the statutory text. The employment of indicia of legislative intent to construe a statute, however derived, makes sense only in the pursuit of that enterprise.

■ The quest for legislative intent is not unbounded: "[I]t still remains true, as it always has, that there can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not find expression in their words." (*Ex Parte Goodrich* (1911) 160 Cal. 410, 416-417 [117 P. 451]; also see, e.g., *Anderson* v. *I.M. Jameson Corp.* (1936) 7 Cal.2d 60, 68 [59 P.2d 962].)[6] "[T]he meaning of a statute is to be sought in the language used by the Legislature." (*In re Miller*

---

[6]Another formulation is provided in de Sloovere, *Textual Interpretation of Statutes* (1934) 11 N.Y.U. L.Q. Rev. 538; reprinted in 2B Sutherland Statutory Construction (5th ed. 1992) 315, 319 [*Textual Interpretation*]): "[T]he real problem of interpretation in most cases is . . . the making of a satisfactory choice from the several possible meanings that the text will bear, the choice may well be one between literalness, logic, history, analysis, grammar, rhetoric, or a meaning derived from aids extrinsic of the text. But which ever is chosen, it must be justified by the whole text by fair use of language."

(1947) 31 Cal.2d 191, 198 [187 P.2d 722].) "Words may not be inserted in a statute under the guise of interpretation." (*Id.* at p. 199, relying upon *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365-366 [5 P.2d 882].)

There is no semantically permissible reading of the Public Employees' Retirement Law by which to achieve the result sought by Sacramento. There is in fact no language in section 20021, as amended in 1987, to construe. It simply lacks the conditional language which Sacramento would have us insert. Moreover, as noted, a companion section, added in the same enactment, does condition the extension of safety membership to harbor and port officers upon the election of the contracting agency. (§ 20019.37; fn. 2, *ante.*)

To overcome this obstacle Sacramento relies upon the oft-repeated premise that the purpose of statutory interpretation is to ascertain and effectuate legislative intent. (E.g., Code Civ. Proc., § 1859 ["In the construction of a statute the intention of the legislature . . . is to be pursued, if *possible* . . . ."], italics added; also see, e.g., *City of Huntington Beach* v. *Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].)[7] It urges us to find the intent in the extrinsic aids upon which its claim is founded and implies that we derive the authority to amend the statute from this source. That is not the case for reasons which plumb the line which separates the judicial from the legislative power.

### B.

The California Constitution declares that the "powers of State government are legislative, executive, and judicial" and that "[p]ersons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) "The legislative power of this state is vested in the California Legislature . . . ." (Cal. Const., art. IV, § 1.) The legislative power to make law may be exercised only by the enactment of a statute. "The Legislature may make no law except by statute and may enact no statute except by bill." (*Id.* § 8, subd. (b).) For these reasons "[t]he will of the Legislature must be determined from the statutes; intentions cannot be ascribed to it at odds with the

---

[7]"The classical statement is in *William* v. *Berkeley*, Plow 223, 231, (1601): 'Whoever would consider an act well ought always have particular regard to the intent of it, and accordingly as the intent appears, he ought to construe the words.' It simply means that as the legislative intent appears from the text or context or as light may be thrown upon them by extrinsic aids one ought to construe the words." (*Textual Interpretation, supra,* at pp. 328-329.)

intentions articulated in the statutes." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)

This constitutional limitation on the mode of enacting law "means that not even the most reliable document of legislative history, such as a conference committee report, may have the force of law." (Dickerson, The Interpretation and Application of Statutes (1975) pp. 9-10.) Neither the Legislative Counsel nor the staff of the Legislature make utterances which constitute law.

If the meaning of a statute can be declared without the support of a statutory text, the law is not made "by" the statute, it is made by the courts in violation of the Constitution. This does not mean that legislative history may not be brought to bear upon the construction of the statutory text. Its utility, however, is confined to that task. ■ "The significance to be accorded extrinsic evidence of legislative intention (or purpose) depends upon its capacity to resolve ambiguities in statutory language . . . ." (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697].) As has been frequently said: "In construing the terms of a statute we resort to the legislative history of the measure only if its terms are ambiguous." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148] and cases cited therein.) An ambiguity arises only if ". . . there [is] more than one construction in issue which is semantically permissible, i.e., more than one usage which makes sense of the statutory language given the context and applicable rules of usage." (*County of Sutter* v. *Board of Administration* (1989) 215 Cal.App.3d 1288, 1295 [264 Cal.Rptr. 233].)

A claim of ambiguity cannot always be decided from the face of the statute. It may be latent. (See *Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996]; *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 249 [279 Cal.Rptr. 325, 806 P.2d 1360] [constitutional provisions harmonized to avoid conflict]; *Stanton* v. *Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372] [same]; *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 495 [159 Cal.Rptr. 494, 601 P.2d 1030] [same].) A claim of latent ambiguity requires a provisional examination of extrinsic matters to make the judgment whether the claim is tenable.

■ In this case there is no tenable claim of ambiguity in the statutory text, latent or patent. Sacramento does not rest its claim on equivocal language; it simply claims the Legislature made a mistake in omitting language conditioning the enhanced benefits upon the election of the contracting agency when it amended section 20021 in 1987.

## C.

Sacramento correctly asserts that ambiguity is not the only ground upon which a court may assign a meaning at odds with the natural and ordinary signification of the words used in the statute. (See, e.g., *Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1334, fn. 7 [283 Cal.Rptr. 893, 813 P.2d 240].) However, it is not every case in which the courts have the power to fashion such a remedy.

The leading case is the reapportionment case of *Silver* v. *Brown* (1966) 63 Cal.2d 841 [46 Cal.Rptr. 308, 405 P.2d 132] (*Silver II*). The court in a prior case had held that the existing legislative apportionments were invalid, that reapportionment must occur in time for the 1966 election, and that, failing the enactment of a valid plan, it would put in place its own reapportionment plan. (*Silver* v. *Brown* (1965) 63 Cal.2d 270 [46 Cal.Rptr. 308, 405 P.2d 132] [*Silver I*].) The court *retained jurisdiction* to review any such enactment.

The Legislature enacted a reapportionment statute which was considered in *Silver II*. The descriptions of some districts, if given literal effect, would have resulted in violation of the constitutional limits set forth in *Silver I*. (*Silver II, supra*, 63 Cal.2d at p. 844.) The Governor offered the aid of legislative history to show that the offending descriptions were ambiguous or erroneous. (*Ibid.*) The Supreme Court accepted this showing as a ground for construction of the statute, using descriptions contained in the legislative history presented, "to obviate the ambiguities and technical errors in its literal provisions." (*Id.* at p. 846.)

*Silver II* advances two grounds of authority for this action. The first is the established doctrine that: "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (63 Cal.2d at p. 845.) The second ground is the consideration that "[i]n construing legislative remedies for malapportionment enacted under the pressure of impending election deadlines, courts must also adopt flexible techniques to discharge the duty they share with legislatures to secure constitutional apportionments in conformity with decisions of the United States Supreme Court." (*Id.* at p. 846.)

Sacramento argues that *Silver II* and similar cases warrant the use of the extrinsic aids it proffers. It claims that we should derive from the Legislative Counsel's Digest and legislative committee staff reports a legislative intent to enact a statute making optional "local safety membership" for fire department employees whose function is fire training, prevention, or investigation

and embody that intent in a statutory gloss that finds no support in the language.

Neither *Silver II* nor any similar precedent extends so far. What Sacramento seeks is to use extrinsic aids to establish a mistake in the statutory language when there is no *intrinsic* indication of a mistake.

Unlike *Silver II*, the retirement system is not an area of the law where the courts have a constitutional or common law font of lawmaking power, permitting the judicial promulgation of law, using extrastatutory by-products of the legislative process, under the rubric of statutory construction. Unlike *Silver II* there is no tenable claim that the language in the 1987 amendment to section 20021, or in the other statutes of the Public Employees' Retirement Law, discloses a purpose that is inconsistent with the univocal plain meaning of the statutory text or that the plain meaning of the text leads to absurd results.[8]

## D.

Sacramento also relies upon a 1989 enactment which deleted the 1987 amendments to section 20021, insofar as they extended to employees engaged only in fire prevention, fire training and fire investigation without a component of active firefighting,[9] and placed them in a new section 20021.01, which is made conditional upon the election of the contracting agency. (Stats. 1989, ch. 1464, §§ 1 and 2, pp. 6534-6535, eff. Oct. 2, 1989.)

---

[8]Sacramento suggests that there is an absurdity presented because, in light of the subsequent legislation, persons hired as fire prevention, training, and investigation employees after it became effective are entitled to "local safety membership" only at the election of the local agency. This only aids a claim that the subsequent legislation is absurd. However, even as to that, reducing pension benefits for future employees presents no absurdity. (See generally, *Claypool* v. *Wilson* (1992) 4 Cal.App.4th 646, 669-670 [6 Cal.Rptr.2d 77].)

[9]The enactment amended section 20021. It does not completely restore section 20021 as it read prior to the 1987 amendments. It *adds* the following job functions to the definition of "firefighter": employees engaged in "active firefighting and fire training, active firefighting and hazardous materials, active firefighting and fire or arson investigation, [and] active firefighting and emergency medical services . . . ."

As amended, it reads as shown, adding the underlined matter and deleting the strikeover matter. " 'Local firefighter' means any officer or employee of a fire department of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and whose functions do not clearly fall within the scope of active firefighting, or active firefighting and fire prevention service, active firefighting and fire training, active firefighting and hazardous materials, active firefighting and fire or arson investigation, or active firefighting and emergency medical services, or fire investigation service even though that employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active firefighting, or active firefighting and fire prevention service, active firefighting and fire training, active firefighting and hazardous materials, active firefighting and fire or arson investigation, or active firefighting and emergency medical services, or fire investigation service, but not excepting persons

An urgency declaration accompanying the enactment provides, in pertinent part: "In order that unintended potential consequences and confusion resulting from a recent revision of the definition of 'local safety members' in the Public Employee's Retirement System may be remedied at the earliest possible time, . . . it is necessary that this act take effect immediately." (Stats. 1989, ch. 1464, § 15, p. 6540.)

Sacramento suggests that this declaration shows the Legislature intended in 1987 to confer extended coverage at the option of the local agency. It relies upon the doctrine that "[a]lthough a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed." (*Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289].)

The urgency declaration affords no support for Sacramento. ▆ The recognition of subsequent assertions of legislative intent is derived from cases where the meaning of the earlier enactment is "unclear." (See, e.g., *Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 977 [185 Cal.Rptr. 49].) It cannot rest upon the notion that the (subsequent) Legislature has authority to interpret the earlier statute for that is a judicial task. (See. e.g., *Del Costello* v. *State of California* (1982) 135 Cal.App.3d 887, 893, fn. 8 [185 Cal.Rptr. 582].)

The doctrine's legitimate ground is that, as to unsettled questions concerning rules of decision and absent a good reason to the contrary, the Legislature's subsequent resolution should receive deference. (See *Mahon* v. *Safeco Title Ins. Co.* (1988) 199 Cal.App.3d 616, 623 [245 Cal.Rptr. 103].) It presupposes a case in which the question of meaning is closely balanced, the views of reasonable persons might well diverge, and no private rights have clearly accrued under the earlier statute.

▆ These preconditions are not satisfied here. The textual meaning of the 1987 amendment is transparently clear. The firefighters who were granted advantages by that amendment are entitled to judicial protection of the rights which accrued as a result of their continued, faithful employment in reliance upon the law during the period prior to the subsequent legislation. (See, e.g., *California Teachers Assn.* v. *Cory* (1984) 155 Cal.App.3d 494, 507-508 [202 Cal.Rptr. 611].)

Sacramento also argues that the 1987 amendment to section 20021 has been "rendered" retroactively ambiguous by the 1989 enactment. This argument displays a conceptual confusion. Language cannot be "rendered" retroactively ambiguous by subsequent events. The assertion in the urgency

---

employed and qualifying as firefighters of equal or higher rank, irrespective of the duties to which they are assigned."

declaration that the 1987 amendment had "unintended potential conse-quences" is a statement of legislative inadvertence, rather than legislative intent. Legislation often has unintended consequences. That affords no support for the construction of the 1987 amendments in a manner wholly unsupported by their text to avoid the "unintended" consequences.

### E.

For all of the foregoing reasons, we find no cognizable reason to depart from the plain meaning of the Public Employees' Retirement Law as amended by Statutes 1987, chapter 1411. The trial court did not err in concluding that under that law "local safety membership" was conferred on all firefighters as defined in section 20021, as amended.

A fortiori, Sacramento's derivative contention that the trial court erred in concluding that such firefighters obtained a vested right to the continuance of this status so long as they remain so employed also fails. Having been accorded the more advantageous benefit status by statute during their em-ployment, it cannot be diminished without offset by a comparable new advantage. (See, e.g., *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 867 [148 Cal.Rptr. 158, 582 P.2d 614].)

### II

■ PERS contends the trial court erred in finding that section 20803.2, which governs the conversion of past service in the less advantageous classification of "local miscellaneous service" to "local safety service," is inapplicable to employees brought within the definition of firefighter by the 1987 amendment.

The trial court announced, without explanation, that the statute applies only where reclassification is made by a local agency pursuant to a statute which affords such an election. Thus, the trial court concluded that those engaged in fire prevention, training, or investigation who were brought within the definition of firefighting by the 1987 amendment effective on January 1, 1988, "don't get safety service credits for pre-1/1/88 service." The court held that such employees are not entitled to have their local miscella-neous service prior to January 1, 1988, converted to local safety service pursuant to section 20803.2 because, in the trial court's view, (1) "[t]here was no legislative intent in the 1987 legislation to apply safety service credits to pre-1/1/88 service," and (2) section 20803.2 applies only when "reclassification occurs by action of the employing agency, not by the Legislature."

As PERS notes, section 20803.2 contains no language regarding the manner of the reclassification and affords no suggestion that its application

is so limited. Sacramento makes no attempt to justify the trial court's rationale, and fails to address the application of section 20803.2 to the reclassification effected by statute.

As related, section 20803.2 (fn. 5, *ante*) by its terms applies if an employee's past service "[w]as rendered in a position that has subsequently been reclassified as a local safety position . . . ." A position may be "reclassified" from miscellaneous to safety in a variety of ways, including by statutory enactment. (See, e.g., § 20017.986.) Applying a reclassification to an employee with prior miscellaneous service occasions the problem of melding the application of two different sets of provisions governing the respective classifications, regardless of the mode of reclassification. No reason appears why the solution provided for this problem in section 20803.2 should be limited to reclassifications occasioned by an election of a local agency under a statute permitting such an election.

If the term "reclassification" in section 20803.2 were ambiguous in this regard, we would be obliged to construe it liberally in favor of the employees. (See, e.g., *County of Sutter* v. *Board of Administration, supra*, 215 Cal.App.3d at p. 1295.) If the question of ambiguity were evenly balanced we would accord deference to the views of PERS, as the interpretation by the agency charged with administering the statutory scheme.

In sum, we find no plausible basis to sustain the ruling of the trial court that section 20803.2 has no application to employees in positions reclassified by Statutes 1987, chapter 1411.

## DISPOSITION

The judgment is modified by striking out the words in paragraph 6 of the trial court's order following trial as follows:

"6. Government Code section 20803.2 is ~~only applicable in cases where a position is reclassified by the local employing agency and~~ does ~~not~~ apply in this case because the reclassification was made by the Legislature."

As so modified, the judgment is affirmed. PERS shall recover its costs of this appeal.

Sims, J., and Scotland, J., concurred.